I want to thank our guests from Hunter College Pre-Law Program. Oh, and I guess our guests are leaving, so let's just wait a minute for them to shuffle out the door. All right, I think they're quiet enough. All right, Mr. Sendrewitz. Yes. Good morning, your honors. May it please the court. My name is Alex Sendrewitz of Quintella Chimury, counsel for defendant appellant John Beisel. It's respectfully submitted that the district court abused its discretion in its February 19th, 2024 memorandum and opinion by granting Plaintiff Apelli's fee application in its entirety. In doing so, the district court concluded, among other things, that the Apelli's lack of success on all but portions of two of his original 18 claims was of no consequence, based upon the unsupported conclusion that all of Apelli's claims were intertwined. While we dispute that, even if it were true, however, the district court abused its discretion by failing to reduce Apelli's fee award to account for his partial success. In all the three cases that were cited by the district court in its memorandum and opinion for the proposition that where claims arise out of a single set of circumstances, the reduction sought is inappropriate, those courts went on to apply a percentage reduction to align the fee award with the plaintiff's degree of success. And do you have a case that stands for the proposition that failure to do that constitutes, always constitutes an abuse of discretion? It doesn't always. It's certainly based upon the circumstances. So what kind of factors would you look to? You would look to the quality versus the quantity. So for instance, in this particular case, you would look to... I'm sorry, we would look to that? No, the district court would look to it when they're making a determination. And then the appellate would look at these as well to make a determination as to whether it was an abuse of discretion or not. An abuse of discretion. Correct. Can you explain what facts you think are so egregious that we would find an abuse of discretion? So one thing that we believe is egregious is the fact that the district court found that all of the unsuccessful and the successful causes of action were intertwined. Now, one particular one is the withdrawn Monell claim against the county of Nassau. We don't believe that that was sufficiently intertwined with the successful subparts of the appellee's false arrest and malicious prosecution claim. Essentially, for the Monell claim to attach to the county of Nassau, the policies and practices led to the deprivation of appellee's constitutional rights would have had to be determined. I didn't find a precedential case that said that a Monell claim, a prosecution claim, and a false arrest claim need to be treated separately for fee award purposes. Do you have one? It's not as if they need to be treated separately. It's the court looks at the successful versus the unsuccessful claims, and they're not going to be awarded upon the unsuccessful claims. So I agree that a Monell claim is different from the officer's own liability, and it involves the proof of different things. So for a Monell, you have to show this policy or practice of the municipality. And so I guess if you spent a lot of discovery time digging into the records of the county council and historical practices or something that's only relevant to the Monell claim, maybe that's a lot of time spent on a claim that was unsuccessful. On the other hand, there could also be overlap between the discovery you do into the officer's liability and the Monell claim because the training of officers in the county would be relevant to both. The district court here seems to think this is a case where the discovery efforts overlapped, and so therefore you can't separate them out. So why is that wrong? Well, with regard to the Monell, I think the overriding one was the denial of medical treatment. The denial of medical treatment was rejected by the jury, and in support of that, the appellee had retained two separate experts for the proposition that the delay in getting him to the hospital from the accident scene has caused this cascade of events. So essentially, the surgery was pushed back. Now, one of the interesting things about this case is that the two claims that were presented to the jury, the false arrest and the malicious prosecution, were divided into subsections, if you will. So the first subsection of the false arrest claim was at the accident scene. So the denial of medical related to that particular point of the false arrest. So when you look at this denial of medical and all the time spent, the thousands of pages of medical, the depositions of the experts, they are not related to the distinct successful claims of false arrest and malicious prosecution. So that's maybe a good example where you're saying you can look at something in the billing and actually divide the expenses for that particular thing and show that that was only related to an unsuccessful claim. That's correct, Your Honor. But I asked about the Monell. I mean, can you do a similar thing for other claims, or is the denial of medical treatment kind of unique in that regard? Well, the Monell, it was the subject of discovery, and it was the subject of an order dated June 28, 2016. So the county had to go and they had to do certain due diligence with regard to whether there was complaints of misidentifying individuals as being intoxicated, and then there was a Jackson affidavit submitted. So you can parse through. However, to the extent that you can't necessarily parse through, that's why a lot of courts will do a cross-the-board reduction. But I do think that the larger portion – Well, okay, so I get that you could do that, and I don't think we would say it would be an abusive discretion if the district court had done an across-the-board reduction because there were unsuccessful claims. But if the district court thinks about that and says, you know, it looks like a lot of the same discovery would have happened anyway, I can't really separate them out, and it might have been overlapping, is that an abusive discretion? I think that for the purposes of our abusive discretion, the stronger point is certainly the denial of medical. But further than that, there was no explanation in the memorandum of opinion. It was just a conclusory assertion that all claims were contemporaneous in time, same facts and same witnesses. I'm not quoting it precisely. But essentially there was no explanation, even if you're looking at the memorandum. So there might be cases where there's some underlying transaction and you have a number of different theories of liability that you kind of put into your complaint, and you only end up prevailing on two out of six. But you would do the same discovery anyway because you're discovering facts that you fit into all the different causes of action. And actually the expenses wouldn't be that different if you had brought two claims versus six, right? It's possible that exists, and the district court thought that that was basically what was happening here. You're just saying that that's clearly wrong? Agreed. That's exactly what I'm saying, Your Honor, and it relates. I get the denial of medical treatment point. That is something that's severable from it. But what you said about the Monell claim is it's not obvious from the records that you can really sever out those expenses. You're just sort of saying you should have inferred that there was a distinction and had an across-the-board cut. But if the district court thinks it's like I said, which is you're going to do the same discovery and the same effort anyway, no matter how many legal theories you have, then you wouldn't do an across-the-board cut, right? So our main focus with regard to it does relate to the denial of medical because of the retention of experts. So let me ask on that. Were the medical experts in the reports relevant to liability on false arrest and malicious prosecution? At best, it could be. Some relevance. At best, it could be relevant to the unsuccessful sub-portion of the false arrest, and I think that that's one of the unique things about this particular case. Because it's something that happened at the scene. Correct. And the jury determined that there wasn't a false arrest at the scene. Correct. There was a false arrest and continuing to hold him later after the fact. That's correct, Your Honor. And that would be after the purported denial of treatment occurred. Correct. And with regard to the medical records, there were thousands of pages of medicals, but for the time frame as to when it would have been relevant to the false arrest or the initiation of the malicious prosecution, we're really only talking about a couple of days' worth. So abuse of discretion would mean, for it not to be an abuse of discretion, you would be required to distinguish among medical records, some of which are relevant to a successful claim and some of which are not? Is that the idea? Well, I think that what we're dealing with as far as the time frames, when we're looking at, so for example, there were countless medical records that related to years after the incident, and that was going to the damages portion of the denial of medical. So I think when you look at it as a whole, even to the extent that you're unable to parse through, it would be appropriate in this instance to do it across the board. However, I don't believe that the concern of not being able to parse through the billings here was what we were dealing with. What is that? Can you explain that? I'm sorry. So with regard to essentially, and Your Honor, I pointed on this before, is that the primary and practical purpose of applying the intertwined doctrine is the difficulty of dividing hours associated with the unsuccessful claims. So while there could be an argument as it relates to the medical records that related to some successful claims, the vast majority of the medical records related to the unsuccessful claims. So you're saying where there's a sort of clear chronological distinction or the like, you have to parse, or it's an abuse? You either have to parse or do an across-the-board cut. Otherwise, it's an abuse of discretion. Is that the rule that you're – I'm not saying that there's a definitive rule that you have to. But I'm saying that there's – it's the abuse of discretion when you award fees for unsuccessful claims. And I think here there is a clear demarcation, and it's easy to parse through the record. That's a broader proposition than what you said earlier. Unsuccessful claims, assuming that all of the work that went into them were unique and identifiable, right? Because, like, before you were at least – Well, not being intertwined. Right. Yes. Okay. So, I mean, one of the things that I think is challenging is that you make a lot of complaints about how the district court did this. You at least are not before us saying, you know, these three entries were too much because they were related to the medical issues, and they were after the fact, and here are the reasons why they weren't appropriate. And you're expecting somebody to be able to parse through it entry by entry when you yourself are not doing that. Well, we're not expecting the district court to parse through entry by entry. However, they are tasked with at least doing due diligence and reviewing the records to some extent. And when you're looking at the memorandum of opinion, there is no example, there is no reference to the actual entries. This is really what you're saying. So you're saying the district court said everything is intertwined, and therefore the same discovery would have happened anyway. That's clearly erroneous with respect to the denial of medical treatment because these experts serve no function except for supporting claims that were unsuccessful. With respect to other claims like the Monod claim, maybe there was some intertwinement, but even if you can't identify it in the records, some of it wouldn't have happened if he had only pursued the successful claims, and so therefore there should be an across-the-board cut. That's correct, Your Honor. But you could be right about the first one and wrong about the second one. It could be that because the denial of medical treatment is clearly severable, maybe that's an abuse of discretion, but the decision whether or not to do an across-the-board cut is within the district court's discretion. That's fair, Your Honor. Okay. Thank you. Okay. Thank you, Mr. Singewitz. You've reserved time for rebuttal. Let's hear from the appellee, Mr. Horn. May it please the Court. Charles Horn of Horn-Wright. Good morning. I'd just like to address one of the questions that the bench was asking Mr. Singewitz. As it pertains to the expert witnesses and their relevance, it was in their briefs, it was also an oral argument, I believe that to be just demonstrably false, and the record is before you. If you look at two experts testified, one on behalf of the appellee and one on the appellant, one was Dr. Cohen on behalf of the appellee and one was Dr. Snepper. Dr. Snepper's testimony is included in full in the record in SA1 through SA47. I would submit to you that conservatively, 80% of all of his testimony directly relates to the false arrest claim. Directly. And on both sides. On direct and because it was their witness. But isn't it the false arrest at the scene? Because the denial of medical treatment occurred at the scene. And the jury said that there wasn't a false arrest at the scene. No, Your Honor. I know that this is unorthodox, but just to give you a time frame of facts. So approximately 11.55 in the morning, he is involved in the accident. He is put in cuffs at 12.55. He is then brought to CTS, the central testing unit, where he goes through a battery of tests, all the while begging to go to the hospital. He is eventually taken to the hospital. The very crux of this case has to do with what Officer Bison knew. Because he went with him to the hospital. The AMT who transported him to the hospital said that he was in septic shock and he was in renal failure. The plaintiffs testified that doctors told him, told the officer, that sepsis was the reason why he had the slurred speech. Sepsis was the reason why he had all of these, the symptomology, that the officer was equating to the use of drugs. Because they did, they checked for alcohol, there was none. So that time period in the hospital with the medical records that are irrelevant, that is absolutely false. At the trial, that was absolutely the critical pieces of evidence. Because both the doctor who treated him and the nurse were dead at the time of trial. And dead shortly after the same time. Okay, but I mean, everything you said, I didn't hear a connection to the false arrest. I mean, that's all evidence that would show they knew he had a medical need and maybe they denied him treatment. But you didn't prevail on that claim. Your Honor, because our false arrest goes from 12.55 in the afternoon to 1.15 in the AM of the following day. Because that's when the felony complaint is charged. Isn't the point that the, at least as I understood it, that medical information is what vitiates the probable cause? Correct, Your Honor. And so, yes, it goes to the false arrest. So because he was in shock during that period, then he wouldn't have been intoxicated? No. Because he was having a medical crisis? Because everything they were relying on for probable cause was vitiated by the fact that the doctor said all of these symptoms are sepsis. Yeah, they're sepsis, not intoxication. It's not intoxication. And in addition- Right, it's not intoxication. The doctor was sure because there would be counter indications, pupil dilation, etc., etc. So at the end of the day, the proposition that these medical experts weren't absolutely critical for our false arrest claim, which we prevailed on, is false. Going through these medical records and how these medical records became absolutely the most critical piece of evidence at the trial, yes. And actually, the most critical piece of evidence was what was not in the medical records. Because their witness got up and testified that all his information came from the medical records, but he failed to notice there was a big stamp on the top of it that said these medical records are incomplete. He failed to notice that. And we pointed out through these medical records that not only did the staff at the hospital have knowledge of sepsis, that they would have known and could have said it to the police officer. Like I said, because everyone knows. Okay, that's interesting. But, you know, just taking a step back, it is true that you originally brought 18 claims against seven defendants and then only prevailed partially on two claims against one defendant. Isn't it a little odd to award full fees for the entire litigation effort? Wouldn't we normally expect some kind of a reduction to account for the unsuccessful claims? I don't believe so, Your Honor. And just as far as the amount of defendants in the beginning, there were John Does. There was only two named defendants and three if you count the county itself, which was at the end as well. And as far as the causes of action, if you look at the causes of action, which I'm sure Your Honor has, there were false arrests. The bulk of those things that were dismissed in the motion to dismiss, which was back in 2015, it had to do with the notice of claim issue. And the causes of action still carried over. For instance, defamation. No, there wasn't a state cause of action for defamation at the end. But he was compensated for damage to his reputation. That was put before the jury because those are substantial. Well, so what about the Monell claim? It is true that to prevail in a Monell claim you have to show not just that the officer was culpable but that the county had a policy or practice that led to the injury. That would require a whole different kind of legal theory and a whole different kind of evidence, wouldn't it? Well, the answer is I would – yes, to a point, but also you can't have a Monell claim unless you can establish the underlying constitutionality of the actions against – levied against the defendant in this case. You're saying you're – you spent all the time on the first part and never got to the second part, and so therefore the fees count for both? If I may be frank – and this is contained in the record. Discovery was – to call the discovery process obstructionist is to be very, very mild. And it's in the record. If you check in A through – I got that from the record. You don't have to – okay. I mean it was – I don't know why – which way that cuts. I mean if you're – if there's lots of discovery fights over evidence that is relevant to a claim that was unsuccessful, then maybe you shouldn't get fees for it. And if there were discovery fights over evidence that was ultimately successful, then maybe you should get fees for it. I'm not sure the fact of discovery fights means – cuts one way or the other with respect to the fees. Well, one, we didn't get – the Monell – the bulk of the Monell discovery they claimed all along was lost in a computer crash. And it was after numerous motions to compel where they actually had – the rubber hit the road and the court said, no, we want a witness to put in an affidavit. Then there wasn't a computer crash at all. So everything they had told us all along was wrong. I don't think there was any malice in it. I just think it was a dumpster fire that no one really knew what the left – right hand didn't know what the left hand was doing. But at the end of the day, we didn't get much in the way of Monell discovery. It seems like you spent a lot of time on it, even if you didn't get much ultimately. So that – You're right. That wasn't the only thing we were looking for. I mean they didn't turn over anything. And when they turned over things, they would give us alphanumerics that didn't match each other. Did the district court reference the obstruction of the discovery process as part of the reasoning for failure to – for not cutting? Well, I won't – they didn't – the court didn't use obstruction. I think the court politely put that it was vigorously defended by the defendants. In other words, it took a lot of time because it was hard. Yes. And I think the court was – the court was also just – the trial judges – Isn't that a different question? If it took a lot of time, that's a separate question. So that means overall there's going to be more fees than if it took less time. But it doesn't give you the answer as to whether everything is intertwined and therefore you should just get the full award of fees, right? Well, as far as intertwined, if we're going to specifically look at the intertwined, I would – the court did recognize – if you look at the Reed case, the Reed case talks about – and that's a Second Circuit case. It's left to the discretion of the court. The court was in the best position to see this, and not only that, but the judge – To see what? To see whether they're intertwined? Certainly. She not only dealt with discovery but she dealt with the trial itself. So she was there. This decision was not made in a vacuum. And to even approach abuse of discretion, I don't think it's even in the zip code. At the end of the day, she knew what was going on, why – I mean if we had a case where it was more clear, let's say you had claim A and claim B and you prevail on claim A and you fail on claim B. And the bills actually show we spent X number of hours on claim A and Y number of hours on claim B. So it's like easily divisible. But then the district court nevertheless says, well, it's all intertwined. I'm going to just give the whole fee award. That would be an abuse of discretion, right? Depending on the circumstances, I can see that. So it would be an abuse of discretion to award fees that are clearly for unsuccessful claims. It could be is what I think you're saying. It could be, yeah. I would agree with you there. But the thing I would point out – So we don't just say, well, you're just there and you saw it. But we do review the records. Absolutely. The only disadvantage that this court has is you're really looking at the cold record rather than actually knowing the parties and what went on in a chronological sense. But I would submit to you that the record before you, there's absolutely nothing in the record that would substantiate abuse of discretion in any sense. What about just this intuition that I was suggesting that if there's 18 claims against seven defendants, I understand there's John Doe defendants, but maybe you did discovery to figure out who they were. But let's even say it's four and a half defendants. There was two. And you only prevail on two claims against one defendant. Wouldn't you expect just some reduction? No, I wouldn't. It seems like it would just depend. Lots of times litigation discovery involves overlapping claims and overlapping defendants. And it is hard to imagine a kind of parsing for some kinds of claims in most cases. We're talking about really just kind of a singular set of circumstances from which multiple claims are derived and multiple defendants are derived. I mean, certainly my experience managing discovery in cases like this, you don't typically, I mean, there might be lots of instances in which fee reduction is appropriate. But the fact of multiple claims and multiple defendants doesn't strike me alone as a basis to conclude an abuse of discretion. I would just point out one thing, too, just so you understand. There's two individually named defendants originally. It's a Sergeant Gabrielli and then police officer Biesel. The reason why Gabrielli eventually got out. In the county, right? In the county. That's what I'm saying. Two individuals. But when we're talking about, like, who did what? The reason why both of those individuals were named was they were both on the felony complaint. Sergeant Gabrielli signing off as a sergeant. It wasn't until we were through with discovery that the position was solidified by the county that Gabrielli is merely signing off as the supervisor. He's not attesting to the facts in there. Therefore, the arresting officer is Biesel. If you had a supervised claim, when did you discover that? Yes. Well, the discovery basically ended most of those cases, and that's why we voluntarily walked away from some of the claims, because the discovery didn't support it. But that didn't occur until years of discovery and us pounding at the door. And what about, you know, maybe it's a small issue, but the billing rate for associates? If we have historical rates at $200 to $325, you know, why should the district court have said $400 an hour is excessive? I would just point out that it is not argued on this appeal that any of the rates that were granted are outside those accepted within the Second Circuit. And it was at the discretion of the court. The case law is clear that when it comes to rates, especially when it comes to rates, the district court is the best position to do it. And in this court, the court gave its rationale as to why. I believe also if you look at the rationale. The rationale as to why was because of special expertise? Yes, yes. And both individuals were. And even when it's argued that they shouldn't have got those rates, in the argument of Pallant, they admit both of these individuals had extensive civil rights experience, and this is a civil rights case. Okay. Thank you very much, Mr. Horn. With that, we'll turn back to Mr. Sanger with Conor Rebuttal. Thank you. Thank you, Your Honors. I do just want to go back to something Mr. Horn said and what we were discussing before with regard to the experts and as it relates to the denial of medical. And the relevance or the intertwined to the false arrest, it really only relates to the initial at the scene, which was an unsuccessful claim. And I think that that's important when we're looking at this intertwined doctrine. But what about the argument that the evidence vitiated probable cause for the arrest because it showed that he wasn't intoxicated or that the symptoms are attributable to the process? But the evidence, as it relates to what the experts were opining on, the experts were opining on that once he was told, meaning the appellant, that he was diabetic, meaning the appellee, he needed to bring him to the emergency room. And because he didn't do it immediately, that delay is what caused the cascade of medical issues. So I think that it's not so much that the medical experts were opining on whether there was or was not probable cause. Their role was to opine on whether the delay, whether if he was brought. So could you take the experts out of the case and still have all the evidence that's relevant to probable cause presented to the jury? Well, I think that we would have to look at the accident scene for the initial arrest, which inherently the jury found that there was probable cause by rejecting the claim versus when they were at the CTS, the central testing station. So I think when we're dealing with the experts for the denial of medical, we're solely focusing on the accident scene, which was an unsuccessful claim. So I think that that's the relevance to it. Yeah, but Mr. Horn just explained that they testified to a period that extends for a day or a day and a half, whatever, beyond the initial scene. And that is relevant to the question of whether there is a false arrest ongoing beyond the scene. And you're saying that's not correct? Or that is correct, but they had separate testimony that was only relevant to the scene? The overriding majority of what the medical experts were retained for was to determine, A, as to whether this delay from the accident scene over to the hospital. Maybe you don't mean to, but are you putting particular emphasis on what they were retained for, rather than how they're used and presented, for what purposes? I don't necessarily mean to do that. Okay, I just want to make sure. So throughout the discovery process, as well as the expert reports that they had provided, they had opined that this delay from the accident scene, not getting to the hospital immediately, was the cause of the delay in surgery, which inherently caused all of the cascade of medical. They weren't, whether at trial for a couple of questions as to whether their responses could have been considered overlapped with false arrests or not. If a saying is saying, or if the defendants are informed that he's in renal failure, for example, but they say, no, he was intoxicated, but being informed that he was in renal failure would have initiated probable cause, I think a piece of that would be establishing also that he wasn't, not only that they were informed that he was in renal failure, but in fact that he was in renal failure. Is that right? Well, I think that the timing of when these things occurred is relevant, because we're dealing with the subcategories of a false arrest claim, and subcategories of a malicious prosecution claim. So at the accident scene, they weren't informed of anything of that nature. Essentially, the experts opined that when the paramedic on scene told the officer that he was diabetic, he should have brought him there immediately. He needed further evaluation. And because the officer did not get him to the hospital immediately, that delay was the denial of medical that resulted in all of the damages. So can I ask a question? One of the – I know that you're arguing for an across-the-board cut. What would you say to someone saying you're arguing for an across-the-board cut because you cannot parse which parts were appropriate or inappropriate, which were twined or intertwined or not intertwined? And if you cannot do that, how is the district court supposed to do it, and how are you supposed to justify a very crude, blunt, across-the-board cut? Well, I think when you're looking at the – I do believe that it could be parsed out based upon the experts. I think that the expert – the billings related to the experts, that could be parsed out. And I think that the billings related to the medical records that go above and beyond the National University Medical Center. I just looked at what your objection was below, and you didn't say the experts spent two hours looking at something that they didn't look at. Again, you assessed harping on this was not successful. This could be severable. And so if you didn't go to that trouble, how can we find that the district court abused their discretion in not going to that trouble? Well, I think that one of the things that the district court failed to do, in my opinion, is they failed to explain as to how they came to a determination, A, how they were intertwined, or B, why it was appropriate not to reduce for any failure – for the limited success. So I understand Your Honor's inquiry. But the explanation is the intertwined, right? That is the explanation for the failure to reduce. You're just saying that the district court didn't justify the intertwined. Correct. Okay. Thank you. Thank you very much, Mr. Sendrewicz. The case is submitted.